Honorable United States Court of Appeals for the Fourth Circuit. Good morning, counsel. We're happy to have you with us. We're in to hear argument in our last case today. You may proceed. Good morning, Your Honor, and may it please the Court. Joshua Gayfield and Megan McGinnis on behalf of Defendant's Appellants. I will address our Rule 408 and Rule 50 arguments, and Ms. McGinnis will then address the jury trial issue. The trial court here erred by failing to exclude Robert's compromise statements. The Rule 408 analysis here turns on the question of whether a dispute had arisen between the parties at the time of the September 25, 2014 telephone call between the parties regarding Macsherry's claim to a commission. While the question of when a dispute arises under the rule is a matter of first impression, in this circuit there is ample persuasive precedent from other circuits. And we believe this court should adopt the standard first articulated by the Eleventh Circuit in its Dallas opinion, 1985, which prohibits evidence of compromise discussion once at least an apparent difference of opinion between the parties has arisen concerning the validity of a claim. The Eleventh Circuit has been followed by numerous other courts, including the Third and Eighth Circuits, and those are the affiliated manufacturers and liens decisions that we cite throughout our briefs, each of which use a very similar test, actual dispute or difference of opinion. The Fifth and D.C. Circuits are also in accord with these cases. Together, the Eleventh Circuit's Dallas opinion and its progeny illustrate the modern trend towards a circumstantial evidence standard permitting courts to infer the dispute or difference of opinion from the circumstances. The alternative would be some sort of a break line test requiring a dispute to be memorialized to a formal ritualistic notice. The trend, the modern trend is recognized by this court, albeit in a concurrence from Judge Winn in Drakeford, which cited to the Third Circuit's affiliated decision. Affiliated is worth examining closer because in that case, the Third Circuit considered, but ultimately rejected, a stricter construction of a rural 408 dispute requirement. Specifically, the Third Circuit declined to endorse the Tenth Circuit's 1977 opinion, Big O Tire Dealers, in which the Tenth Circuit admitted pre-litigation business discussions where, in that court's view, they had not crystallized to the point of threat litigation. That approach from the Tenth Circuit, which strongly implies at least a formal notice requirement, has not been followed by any other circuit and has been criticized by courts and commentators alike, including Wright and Miller, for being overly ritualistic and thus contrary to the policy objectives of the rule. Those policy objectives are set forth in the 1972 advisory committee notes. First, the compromise statements are irrelevant because they're motivated by a desire for peace, but more importantly, as recognized by this court in fiberglass, Rule 408 promotes the public policy favoring out-of-court settlement of disputes by incentivizing the parties to speak candidly and frankly about their positions. Thus, the actual or apparent dispute standard from the Eleventh Circuit and other circuits better supports the objectives of the rule by protecting negotiations between laypersons who may not have the education necessary to carefully craft their communications in accordance with a more formal standard. Here, we believe that the trial court committed legal error by applying a draconian advance notice standard. Specifically, the trial court found this positive that McSherry had not received any prior communication from defendants as to his request for a commission at the time of the call, and that's from Joint Appendix 419. And the court reviews this standard de novo. We believe that standard is much like that that has been rejected by the courts following the Eleventh, Third, and Eighth Circuit decisions. In addition to applying the wrong standard, the trial court also abused its discretion by ignoring the ample record evidence clearly demonstrating the existence of a dispute. And I'd like to just briefly highlight the key facts from the timeline for the court. Starting approximately a week prior to the sale, which occurred on September 18th of 2014, McSherry repeatedly demanded a commission from defendants, thus putting defendants on notice of his claim. And that was both via email and telephone calls in which he left messages for Mr. Roberts. And that's at 553 to 559 of the Joint Appendix, as well as 1696. After receiving several demands, several days later, defendants responded by terminating McSherry through a letter that directly addressed pay and benefits, although it was conspicuously silent on his demand for a commission. At trial, McSherry admitted that the fact that defendants had A, never acknowledged his claim to a commission, and B, provided him with a termination letter in response to his demands, made him concerned that defendants were not going to pay the commission at closing. And he admits that twice, at Joint Appendix 554 and 55, as well as 561. And defendants then, of course, unambiguously reject McSherry's demand to a commission by not paying him at closing, and instead terminating him, even as they paid a $550,000 commission to Cassie Turley, the listing broker. The foregoing facts make this case much like Weems, where the Eighth Circuit easily inferred the existence of a dispute based primarily on the fact that the employee had asserted her claims to her employer, and the employer had responded by terminating and offering a separation agreement shortly thereafter. So, when McSherry and Roberts get on the phone a week after closing and McSherry's termination, that call can serve no other purpose other than for these two men to attempt to resolve their difference of opinion over the unpaid commission, and avoid potential litigation. Indeed, the call itself evidences a dispute in an attempt to compromise. According to McSherry's testimony, Roberts tells McSherry point blank that he didn't deserve a commission that big, and asked McSherry what he would take. In other words, Roberts was disputing McSherry's claim, but attempting to negotiate, a classic example of the type of compromise negotiations typically precluded by Rule 408. We think the evidence overwhelmingly demonstrates the existence of a dispute under any standard, but even if it was close, and we don't think it is, the tie should go to us. As the Tenth Circuit said in Bradbury, when the issue is doubtful, the better practice is to exclude evidence of compromises or compromise offers. If the court has any questions on Rule 408, I'd like to take them now. Otherwise, I suggest that I would submit on the papers on our 408B argument and turn to Rule 50. Well, I would like you to address the 408B argument, please. Absolutely, Your Honor. The 408B here, the other purpose, which the trial court alternatively admitted the evidence, is impermissible because it directly goes to the validity of the claimant issue. The trial court allowed the admission of the evidence, suggesting that Roberts' admission was evidence of a lack of a bona fide dispute. But, of course, if Roberts' admission was admitting a lack of a bona fide dispute, it's the same as admitting the validity of the underlying claim. We did cite to a court in this circuit, that's Jeffrey and that's unpublished, North Carolina, I believe it, Easton District case, that relied on affiliated and liens to initially exclude allegations, or strike from the complaint, actually, allegations of a settlement offer and then concluded that bona fide dispute under the Maryland Wage and Payment Law is not a permissible other purpose under Rule 408B. Okay, the Maryland statute requires that a dispute be bona fide, right? Yes, Your Honor. Okay, and you equate a bona fide dispute to whether, in fact, the dispute is valid. But, actually, Maryland law requires you look at the employer's subjective belief about whether a claim is valid, not the validity of the claim itself. Isn't that correct? Yes. Well, if that's correct, and that this is evidence of the employer's subjective belief, it isn't evidence, necessarily, of validity of the belief, right? The validity of the claim. So, in other words, they can be parsed out, and that's what I'm trying to figure out here. And I think that you sort of ignore the difference between an employer's subjective belief that a claim is valid and the validity of the claim itself. Your Honor, a couple responses on that. Certainly, number one, it was not parsed out at trial. There was no suggestion or limiting of the evidence to the jury that it was only permissible to consider it with respect to the employer's intent on the lack of a bona fide belief. It was argued to the jury that that was also evidence of the validity of the underlying claim. Yeah, but if it's admissible for one reason, it doesn't matter if it's not admissible for another. Isn't that right? I thought that was pretty standard law. Your Honor, the problem with allowing a purported statement such as that to come in is that it directly undermines the policy objectives of Rule 408. In other words, if an employer is attempting to negotiate with an employee after termination and says something that might be construed as an admission on the bona fides of the claim, then allowing that in, it's naturally going to subsume and the exception is going to swallow the issue. And that's really what happened here. No, excuse me. That might be true if there wasn't, I think it probably would be true if there wasn't a separate claim here under the Maryland Wage Payment and Collection Law. If there wasn't that claim, I think you're right, but there is that claim. But our point here is that McSherry needed to point to that purported admission to substantiate the wage payment claim in the first instance, which directly carries it into the prohibited type of statement under Rule 408. And as courts have made absolutely clear, the exception can't swallow the rule. The types of other, the other purposes contemplated by Rule 408B are typically some other independent wrongs committed in the course of settlement talks, like libel or assault. Mr. Gatfield, this is Jeff Diaz. Can I follow up on that point? There may well be two separate purposes here, but if I recall the record correctly, the district court didn't parse that out to the jury and certainly didn't give a limiting instruction explaining how the jury was to consider this evidence, if at all, on the statutory damages claim, separate and apart from the issue of whether or not there was a legitimate claim to begin with, right? Correct, Your Honor. I think the reason for that is because this was merely an alternative for polling. Of course, if the trial court had relied simply on 408B, then we would have gotten to the point where we were talking about the appropriate limiting instruction. That's what you see in the case law. But because the court found that there was no dispute in the first instance and it comes in under Rule 408A, then the alternative ground for allowing it in didn't actually play out at trial from the jury. Your Honors, I do see that I'm out of time. I did want to address my Rule 50 argument, but I do not want to impinge upon Ms. McGinnis' jury trial argument. Well, why don't you take two minutes? I'll keep addressing whatever it is you want to address now. Thanks, Your Honor. For our Rule 50 argument, I'm simply going to focus on McSherry's failure to introduce evidence supporting his interpretation of the commission term contrasted with his admissions that the term was intended to induce him to procure a buyer. As we pointed out in our briefing, Maryland law requires that the essential contract terms be expressed with definiteness to be enforceable, and this requires mutuality of assent or a meeting of the minds as to the parties' contractual obligations. Here at summary judgment, when the court found the term to be ambiguous, it found that both parties' interpretations of the commission term were objectively reasonable on the face of the document and that parole evidence would be necessary to clear up the ambiguity. McSherry's interpretation, of course, is that he gets paid automatically upon any sale of property while defendants believe it to be a procurement requirement. McSherry needed the jury to accept his construction of the term because he undisputedly did not procure the buyer. However, McSherry failed to show that the parties had reached McSherry's shared understanding of the automatic commission term. He failed to introduce any evidence whatsoever that he had ever discussed his interpretation with defendants, no evidence of a court's appealing, and no evidence of a common industry definition, all typical parole evidence elements. Instead, as we lay out in our briefs, the parole evidence supported only defendants' construction, and the court need look no further than McSherry's own words to reach this conclusion. McSherry in his complaint alleged that defendants reasonably believed their promises would induce action by him to procure a buyer for the property. Under oath, in his answers to interrogatories, which were admitted at trial, he conceded that the complaint, this language in the complaint, this promise of a commission was to incentivize plaintiff to find persons slash entities to lease or purchase the property. In his own words, the purpose of the commission was to incentivize or induce him to procure a buyer. To create a jury question, he needed to present sufficient evidence showing that his employer had agreed to pay him an automatic commission. As he didn't do that, his claim fails as a matter of law. David, can I ask a question about this issue, just so I understand what you seem to think the law requires here? As I understand it, the parties to a contract must manifest their objective agreement to a term, contract term, in this case the question of the commission. But it's not necessary that they subjectively understand those terms in the same way, right? And what Mr. McSherry is relying on is the red line term sheet agreement, the draft, which by its plain language just simply says that it applies to any deals closed after each starts. There's no issue of procurement, whether expressly or otherwise. So I'm not understanding why that isn't enough for a jury to latch on to to find that a commission in this case was warranted. Well, Your Honor, I think we have to go directly to the fact that the court had found that term to be ambiguous as a matter of law, meaning that the construction of that term required plural evidence. In other words, there had to be something by McSherry that he introduced at trial to show that the parties had reached his particular interpretation of the term. And that's where he failed, Your Honor, is that he had absolutely no evidence that the parties had ever reached his understanding of the term, and the evidence at trial vastly outweighed his interpretation. Well, the jury didn't think so, right? It did not, Your Honor, and I think I've addressed some of the reasons for that. Unless the court has any further questions, I'd like to yield to Ms. McGinnis. Okay, thank you. Thank you. Thank you. As Mr. Gatefield mentioned, I'll be addressing the jury trial issue. The wherefore clauses of McSherry's amended complaint asked the court and only the court to determine liability and award damages, interests, and fees. They then asked the court to award other relief the court or jury deemed appropriate. The question here is whether these four passing references to a jury potentially determining other relief satisfied Rule 38. Rule 38 doesn't specify the required form of a jury demand. In its unpublished opinion in Hohman v. Dunning, this court said, technical perfection of jury demands is not necessarily required. Instead, it focused its inquiry on whether a demand followed the spirit, if not the letter, of Rule 38. Here, the trial court followed the Ninth Circuit's careful reader standard from Lutz v. Glendale Union High School. According to the Ninth Circuit, the purpose of Rule 38 is to inform the court and counsel well in advance of trial as to the trial method desired. So the Ninth Circuit looks to whether a demand is sufficiently clear to alert a careful reader that a jury trial is requested on an issue. Its focus on notice is therefore consistent with the spirit of Rule 38. Here, the four passing equivocal references to a jury potentially determining other relief in the wherefore clauses of the amended complaint did not communicate McSherry's desire for a jury trial to a careful reader. We think the history and context of the wherefore clauses is critical to understand why. This is because identical language referencing a jury determining other relief also appeared in the original complaint, and the original complaint did not demand a jury trial. In fact, having carefully read the original complaint, defendants memorialized that very understanding in the civil cover sheet they filed on removal. And their understanding was particularly justified given that the case information report McSherry filed in state court with the original complaint affirmed unambiguously what the original complaint appeared to convey, and that's that McSherry did not desire a jury trial. Let's assume for the moment that you're right about that, that a careful reader wouldn't necessarily see in this complaint and its various iterations a demand for a jury trial. But the district court in this case fell back on an alternative on Rule 39B, which grants the court discretion in the absence of a jury demand to grant a jury request. And it seems to me that the district court in this case exercised its discretion not perfunctorily but fairly carefully by relying on the factors that we outlined in Malvern, and I recognize that whether or not Malvern is a holding or dicta is open to question, but nonetheless it took that opinion seriously and looked at the various factors, the four factors that are relevant there, and exercised its discretion in this case to grant a jury trial request even in the absence of a demand. I just find it very difficult to sort of overturn that discretion, particularly since what we're talking about is a form. There's no question. I mean, there's separate arguments as to whether or not the jury actually reached the correct verdict, but to set aside a verdict simply on the notion that the judge abused its discretion in considering these factors seems to me to be a bit of a big hill to climb, so I'd like you to focus your attention on that. Yes, Your Honor. Well, separate from the Rule 38 argument, the court did alternatively grant McSherry's motion under Rule 39B, and we believe that the court committed two discrete errors in exercising its discretion under Rule 39B. First, the 39B decision expressly incorporated the Rule 38 holding three times, meaning that on three of the factors, the court cited the fact that McSherry had demanded a jury trial in the amended complaint. However, Rule 39B only comes into play when a jury trial was not properly demanded under Rule 38. So by incorporating its Rule 38 holding, the court's rationale can effectively be summarized as, even though McSherry's demand did not satisfy Rule 38, I'm granting the motion under Rule 39B because his demand did satisfy Rule 38. So this reasoning is illogical and inconsistent and can't actually constitute an alternative basis for the court's Rule 38 decision at all. So we would actually argue that by incorporating the Rule 38 holding, the court didn't even conduct a Rule 39B analysis. Separately, the court further abused its discretion by ignoring this court's opinion in General Tire, which emphasized that Rule 39B should not be applied in a manner that emasculates the demand and waiver provisions of Rule 38. So this court's precedent, including General Tire, has exclusively considered when it's an abuse of discretion to deny a Rule 39B motion, but the question here is, when is it an abuse of discretion to grant a Rule 39B motion? It's unclear whether these questions have the same answer, but what General Tire tells us is that there must be some minimum threshold a party has to satisfy before a trial court can grant a Rule 39B motion. Otherwise, Rule 39B would render Rule 38 obsolete. You don't think that the Malbin factors inform that analysis? We think that the Malbin factors inform that analysis, but in evaluating those factors, the court also has to consider whether the threshold showing has been made, and in none of the Malbin factors did the court consider any threshold showing by McSherry. Instead, it often focused on whether defendants had shown prejudice instead of whether McSherry had shown, for example, something beyond mere inadvertence, which is the minimum threshold required by a number of other circuits. And I believe my time is up. I'd be happy to answer any other questions. Do we have any other questions? All right. Thank you very much. Thank you. Your Honor, it's Andrew O'Connell on behalf of John McSherry, the appellee and plaintiff in the trial court below. May it please the Court. Addressing first the Federal Rule of Evidence 408 arguments, plaintiff's position that the rule doesn't apply, in that there had been no dispute at the time that the statements were made. The evidence at trial was that McSherry had not been told that he wasn't getting his commission at the time Mike Roberts made the statement. He was actually told that the reason why Mr. Roberts wasn't getting back to his repeated inquiries about his commission was that his daughter was in labor. In fact, the head of Commercial Development Company's Human Resources Department admitted under oath that she had been avoiding John McSherry, which is not consistent with a party taking a position, a hard and fast position with regard to John McSherry's entitlement to the payment. But I thought the record, counsel, I thought the record also showed that your client testified that he was worried about getting this commission and that he had asked for sums of it along the way and hadn't received them. And so is that not an indication that there was a dispute? Your Honor, it's true that Mr. McSherry admitted that he was concerned about his commission. That's not enough. I think that a party, an individual, an employee's concern about being paid is reasonable and healthy and something that you might encounter in any type of fact pattern like this. And it would not necessarily amount to a squaring off between two opposing parties with regard to the entitlement to the commission. Mr. O'Connell, can I follow up on that? Counsel, you don't think that when he was fired and given his walking papers and the company settled up with him with respect to the money that they thought that he was owed and did not pay the commission, that that doesn't signal a dispute? If the letter that terminated his employment was only directed to him, perhaps. Yes, but the letter was actually delivered to a number of different employees that were being terminated at that time. And it's also critical that the letter, if you look at the letter, it doesn't necessarily unequivocally terminate Mr. McSherry. It just says if the sale goes to closing, then he will be terminated. So I wouldn't actually categorize it or describe it as a termination letter when it was received by Mr. McSherry. It was only, it was conditional. So there's no reason to believe, I don't think that that would put Mr. McSherry in one corner of a ring and CDC and Sparrows Point in another corner at that point upon receipt of that letter. So the answer to your question, Your Honor, is no. I don't think that letter would. So in sum, the evidence didn't bear out that there was a dispute. And importantly, and this is the point I was getting to, the call on September 25 with Mike Roberts was actually the second call between the two parties that day. The two had spoken earlier in the day when Mr. Roberts requested that Mr. McSherry provide him another copy of, or a copy of Exhibit 10, that's the red line term sheet. And there's no evidence that offered a trial that Mr. Roberts told Mr. McSherry you're not getting the commission. And he was already in possession of Exhibit 10 at that time, although he went ahead and asked for another copy. So the point being, if there was a dispute to be had or if the evidence was, or out that the two, that CDC and Sparrows Point were taking a position that he wasn't getting a commission, you would assume or you would presume that that would have come out during that call. That didn't happen. Mike Roberts merely asked for more documentation, which Mr. McSherry supplied. The second reason why the appellee believes that 408 does not apply is because if you look at the evidence as it wore out in trial, well, let me back up. In fiberglass insulators, the court announced that in terms of whether statements are intended to be part of negotiation for compromise, you look at the totality of, I'm misstating the holding, it's whether the parties intended the statements to be part of negotiations for compromise. That's what the court's analysis should be centered around. And in this instance, the statement made by Mike Roberts was, what will you take? Mr. McSherry asked or invited Mr. Roberts to provide him with a number, and Mr. Roberts never did. And if the court looks at the evidence in its totality, it does not appear that Mr. Roberts was intending to negotiate with Mr. McSherry. If that were the case, he would have surely called my client back and perhaps provided the number. I'm sorry, I don't understand where this argument is going. I think you've fairly summarized the record. Where did this go? What does this help you with? Sure. Okay. I'm referring to in the record extract, showing record extract 591 through 592. And the testimony was Mike said... Excuse me, sir, I haven't been clear. I don't understand why this is important to you. What are you telling us all these facts to support what argument? The argument is this was not intended to be part of the negotiation because Mr. Roberts was not negotiating. The testimony provided by Mr. McSherry, right immediately following the statement that is the subject of the appeal said, I said that Mr. McSherry stated to Mr. Roberts on the telephone, I said that I believe that, you know, I'm owed the commission as outlined in the agreement, but if you have something else to offer, please do. The call ended and Mr. Roberts never followed up on that invitation, meaning if you look at the totality of the exchange between the two parties, this was not a negotiation, which means Rule 408 doesn't apply. I hope that answers your honor's question. I thought the evidence was, the statement from Roberts was, I know I owe you a commission. I don't believe you deserve a commission as big. What will you take? That seems to me like a negotiation if I've ever heard one. I don't understand that. And just because your client did not negotiate, I guess this is the heart of your argument, your client didn't want to negotiate, it's not negotiation, but your client offered this evidence to show that the defendant thought that there was something owed to him. So I just don't understand how your argument tracks. Sure, and the argument is this. My client said, but if you have something else to offer, please do. I asked Mr. McSherry then, okay, did the call end then? Yes. He said he wanted to think about it and get back to me. Did he ever do that? No. Meaning there was no intent by Mr. Roberts to negotiate here. That's the point I'm trying to make. But this all goes to whether there were some sort of settlement discussions, right? I mean, maybe I'm just missing something. Sorry, I still don't understand it, but if you think you've done your best, go on somewhere else. The point being is this, Your Honor. If there was an intent by Mr. Roberts to negotiate, he would have responded to my client's offer, but if you have something else to offer, please do. He never did. Meaning the statement was never intended to be part of a negotiation. Mr. O'Connell, can I ask about, let's say that we don't agree with you and we think that 408 is implicated here. I suppose there are two responses that I want you to address, and one is the issue of whether or not the statements could have been admitted for some other legitimate purpose. In this case, it was that there was a separate claim for enhanced damages on marital law for failure to resolve a bona fide dispute over wages, and so I guess the first point is whether or not it was admissible for that. And separate from that, if you would address if we don't agree that there was a legitimate purpose for admissibility, why this error, if there was one, was harmless. Because I'm not so sure that I'm persuaded that it is harmless, but go ahead. Sure. Under Rule 408B, obviously the court understands that the evidence can be offered for another purpose. And what the rule precludes you from doing is you can't offer the statement to prove or disprove the validity of claims that the offers were meant to settle. And the underlying $825,000 commission, the court needs to look at sort of the damages in two different groups. There's the underlying $825,000 commission, and then there's the enhanced damages. Now, the evidence was offered to substantiate my client's entitlement to the enhanced damages, which is available under the Maryland Wage Payment and Collection Law. The evidence was not offered to substantiate my client's entitlement to the underlying $825,000 commission, meaning my client could have offered the evidence under Rule 408B and been accepted by the court to prove that there was no bona fide dispute between the parties. But that's not what happened in this case because the district court didn't find or make that distinction, at least I don't think it did to the jury, did it? If there was no instruction to the jury with regard to how the evidence was to be accepted, you're off and out. If that answers your question. So if that's correct and if we assume that the first purpose was not proper under 408, then what about the harmless error analysis? What's your best case for why that was harmless? If the court determined that it was improper to allow this evidence in for the plaintiff to prove that there was no bona fide dispute, the court could easily look at all the other evidence marshaled by Mr. McSherry that the court's decision to allow this evidence in was harmless error. There's evidence that CDC, that Sparrows Point, and that Mr. Roberts made no efforts whatsoever to reach out to Rob Shelch, the person who negotiated the terms of Mr. McSherry's contract, and asked him whether he offered Mr. McSherry a commission component to his employment contract. They made no effort to do that. The jury could easily find that there was bad faith on behalf of the defendants and accept that evidence. Also, there's no evidence that the jury placed any special importance on this statement in its questioning, in the numerous questions that it posed during its deliberations. This is Judge Cogburn. Isn't the fact that most of this is he said, he said, he said, a couple other people said something, and then backed up with a term sheet to be determined as to who's telling the truth there, and that this statement that's at issue here with regard to whether or not it's a settlement offer is merely one person saying another he said and the other person denying it. It's really all of the evidence. There's a lot of other evidence with regard to this, and this is just one more thing. If they believe McSherry on the other evidence, then isn't this harmless? I believe absolutely, Your Honor. I think the jury had plenty of other evidence to find in favor of Mr. McSherry. For the underlying claim itself, for the $825,000, we have Exhibit 10 itself that has Rob Shelsh's name all over it, wherein he made the red line revisions to the term sheet that he created and admitted he gave to Mr. McSherry for purposes of negotiating Mr. McSherry's employment contract, which was what he was asked to do. That was my time. The other side had some extra time. You can take a little bit extra. Okay, thank you. There was an enormous amount of evidence marshaled by Mr. McSherry that this was the term sheet he was given and operating under for nearly two years. Mr. McSherry offered during the trial evidence that Rob Shelsh even confirmed that this was the terms of his employment. So the jury could easily hang their liability hat on any of those different pieces of evidence to find in favor of the plaintiff in the trial court below. So the admission of this one statement, I know I owe you a commission, I don't believe you deserve a commission as big, what will you take? is simply one small piece of evidence in a hurricane of other evidence marshaled by Mr. McSherry evidencing the party's agreement. It was in writing and Mr. McSherry testified that he went out and signed a red line, or a clean version of the agreement and that was retained by his employers. So the jury could easily have found that indeed, yes, the parties have... Mr. O'Connell, I don't know if you're standing, but before you finish your argument here, I get that, I get the point you're making about the evidence, the other evidence in this record, and I get the point about that he said, she said. The problem I have is that this evidence came from the very horse's mouth that was going to write the check to settle the claim, and it seems to me that the jury could just as easily have said, well, he said it, he's the one who is on the hook for this, that's good enough for us, time to go home. The problem with that analysis, your honor, is that's not what happened at trial. My client brought to bear numerous bits of evidence, essentially not bits of evidence, pieces of evidence evidencing the parties' agreement as to the 75 basis point commission. He had emailed and referenced the written agreement that he signed, and I think this is probably one of the strongest pieces of evidence. Mr. Machere presented at trial, he offered emails that he made to the human resources director during his tenure at CDC and Sparrows Point LLC referencing the agreement that he signed out in St. Louis long before the parties ever went to closing on the Sparrows Point property. That could be construed as very strong evidence that Mr. Machere indeed had a written agreement for a 75 basis point commission for the sale of the property. That along with all the other evidence he presented at trial, meaning the court, the jury could accept any of this evidence and decide in favor of the plaintiff, which they did. There's no special indication, there's no indication that this one piece of evidence moved the needle beyond 50% from Mr. Machere in light of all the other evidence that he presented in this case, which was tremendous. Moving on to the jury question, Your Honor, I realize I'm very short on time. Mr. Machere's jury demand may have been inartful, but nonetheless did not constitute a waiver of his settlement and jury right. And as far as the court, as far as the Rule 39 motion for a jury trial in the event the court feels that there was a waiver, the court meticulously went through all five factors announced in Melvon, stating that the, and quite honestly the one that weighs heaviest or very heavy is that this was a very fact-intensive analysis. The jury issues were numerous. That's something that the trial court pointed out and that was appropriately, could be appropriately decided by a jury. There was no prejudice on the side of the defendants. The plaintiff made the motion in compliance with the court's request. And to be honest, as far as the inconvenience for the court, there was none. It had always been scheduled for a jury trial, at least since the trial was placed on the docket. And the court... What do you mean it was always scheduled for a jury trial? What do you mean? Sure. While the court might have, the court clerk might have docketed this as a non-jury case, when the trial was actually scheduled, was finally put down on the calendar... And how much time went between the two of them? How much time went between the court... Docketing by the clerk as a non-jury trial and then being put down for trial. What you said to us originally was there's never any question about this. What I'm trying to do is to find out how much time elapsed between the case being docketed as a non-jury trial, and then whatever subsequent event you said made it clear that it was going to be a jury trial. You do not have the date that the court... Give me an approximation. Years? I'm sorry, Your Honor, I don't have an approximation. It's been some time. I sincerely apologize. Both dates are... I'll let your colleagues on the other side know. We'll see. I'm sorry to interrupt you. Go ahead. The point I was making is when this was eventually put on the schedule for trial, it was scheduled as a jury trial, which the court pointed out in the memorandum of opinion, deciding the Rule 39b motion, that there was a... It would not inconvenience the court. Okay. If we don't have any further questions, do we have any questions, my colleagues? I guess we don't. Thank you. Thank you for your argument. And I think there's a brief rebuttal. Yes, Your Honor, a very brief rebuttal from defendants here. Turning first to the 408b issue, I would just direct the court to Weems, the Eighth Circuit opinion, where the court had no trouble finding that compromised settlement evidence was inadmissible to show bad faith because it would vitiate the policy objectives of Rule 408. In other words, it was not a permissible other purpose under Rule 408b. And we haven't seen any case in which a situation such as this, where the evidence is arguably admitted for the other purpose of showing bad faith, when that bad faith is directly relied to the underlying validity or liability on the claim that's at issue in the first instance, would actually be permissible under Rule 408b. I think that would be going further than any court has gone, at least any federal court, certainly. What about the harmless error argument? I'm sorry, Your Honor. I did want to briefly respond on that, and I would just point out that this court's recent Landersman opinion notes that in order for an evidentiary ruling to be harmless, we must find that the judgment was not substantially swayed by the error. In other words, that would have to be an express finding by this court should it find that the evidence was erroneously admitted in the first instance. And I would also point out that the Stockman opinion from the Sixth Circuit that we cite found that even a curative instruction to the jury was insufficient to remove the possibility that the jury had been substantially swayed by the verdict. And here we know that McSherry relied heavily upon it on the purported statement because he emphasized it at closing, and that's at Joint Extract 1130 and 1137 to 38, Your Honor. If there are no further questions on that, I just wanted to briefly respond on the jury trial issue. The malbone factors, the most important factors typically are timeliness and prejudice. And here, that's where the trial court expressly incorporated its Rule 38 analysis. In other words, it didn't undergo a further analysis under Rule 39, assuming that the Rule 38 jury trial had not been demanded, as it should have, as Ms. McGinnis pointed out in our initial argument here. To respond to Your Honor's question about when the case was docketed as a jury trial, I do apologize. I'm going to go from my recollection here. I don't have a specific site that I can go to in the record. The case was initially docketed, as we've noted, as a bench trial upon removal, which would have been in late 2014. And the trial occurred, I believe, the trial occurred in 2018. Okay, so the motion for jury trial here was filed, McSherry's motion was filed September of 2017. The jury trial took place in the summer of 2018. Just prior to the filing of that motion, as I recall, I believe it was August of 2017, the judge, out of an abundance of caution, knowing that McSherry was going to file his motion, which we, of course, think had been delayed and prejudicial to us, went ahead and cleared out some time on the docket for initially scheduling it as a jury trial. I think that was going to be in March, ended up moving to the summer due to an unrelated issue. So, Your Honor, the problem we have here with the prejudice is that the parties went through discovery, went through the summary judgment phase, of course, advised our clients, and did all the things that lawyers do when they know it's going to be a bench trial, up until the point where the court was trying to figure out when the trial was actually going to occur. And it was then and only then, after all motions had been resolved, discovery was completed, that the motion for jury trial was filed. I hope that answers Your Honor's question, but I would be happy to. Okay, thank you. Thank you, Your Honor. Well, I have nothing further unless the court does, and for these reasons, we would ask that the court remand with instructions to enter judgment in favor of defendants. In the alternative, we would ask that the court direct the trial court to hold a bench trial on any remaining issues. Thank you. All right, thank you very much. We appreciate your arguments, especially in these hurling times. And I will ask the clerk to adjourn court for the day. Judge Motz, we do have a rebuttal by Mr. O'Connell still. This is a cross appeal. Okay. Yes, Your Honor. I was unable, with the court's questioning, to actually get to Mr. McSherry's arguments for appeal. And given that I'm only allotted rebuttal time right now, what I would like to do is use that time to briefly address the arguments that he has raised in his cross appeal, if that would be all right. I'm sorry, he didn't raise them, but tell me where we are on the cross appeal. Sure, Mr. McSherry. Okay, you can have a few minutes. Thank you, Your Honor. I appreciate it. The error below is that the court revised the judgment pursuant to Rule 59E, which allows a court to revise a judgment in three instances. The first two don't apply in this case. The third would, in which there is a need to correct an error of law or to prevent manifest injustice. The condition precedent for doing something like that, though, is that the courts at the party seeking relief under Rule 59E must have raised the issue below. And the court specifically noted that the defendants below made no argument with regard to a double recovery as to plaintiff's Maryland wage payment and collection law claim and its breach of contract claim. And the defendants can't cite to any instance where they raised the issue below either. In that instance, it would have been error for the trial court to grant relief under that rule, 59E. The court also erred for the same reason when it changed the entry of the judgment from severally to jointly and severally under Rule 59E. Again, the defendants below did not make any argument with regard to the entry of the judgment severally, and it was on actual notice of the issue given the nature of the questions from the jury. The jury was asking them to be granted cumulatively or not cumulatively, which is, I think, layperson speak for joint and several liability versus non-joint and several liability. Being on notice of such an issue and not doing anything or raising the issue to the court prior to the entry of the judgment should be fatal to a Rule 59E motion because the court went ahead and did enter judgment against each of the defendants severally, which, ironically, the defendants requested that the verdict sheet be organized that way. And in that instance, they should bear the consequences of that. And then finally, further justification or further on the error below, the court reasoned that in its memorandum supporting the 59E relief from joint and several liability to just several liability is that because the plaintiff's original pleading sought the entry of joint and several liability, that the pleading controls what type of verdict or, excuse me, what type of judgment would be entered at the end of the case. And that's simply not true. It's not supported by any case law, and it's not supported by the federal rules of court. That's all I have, Your Honor. Okay, thank you very much. Now, do we have a response to that? Do you reserve time for that? That was the final. All right. Thank you very much. We appreciate your arguments. Now I'd like the clerk to adjourn court. Thank you, Your Honor. This honorable court stands adjourned, sign and die. God save the United States and this honorable court.
judges: Diana Gribbon Motz, Albert Diaz, Max O. Cogburn Jr.